UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENARD DARNELL NEAL, | CASE NO. 1:11-cv-1393-MJS (PC) |
| Plaintiff, | ORDER DISMISSING PLAINTIFF'S COMPLAINT WITH LEAVE TO AMEND |
| v. | (ECF No. 1) |
| HECTOR ALFONSO RIOS, JR., et al. | THIRTY-DAY DEADLINE |
| Defendants. | |

Plaintiff Denard Darnell Neal ("Plaintiff") is a prisoner proceeding pro se in a civil rights action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).  Plaintiff has consented to the Magistrate Judge handling all matters in this action.  (ECF No. 6.)

Plaintiff initiated this action on August 22, 2011.  Plaintiff's original Complaint is now before the Court for screening.  (ECF No. 1.)

I. **SCREENING REQUIREMENTS**

The Court is required to screen complaints brought by prisoners seeking relief

1

against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 1949-50.

II.     **SUMMARY OF COMPLAINT**

It appears Plaintiff was previously housed at United States Penitentiary in Atwater, California ("USP Atwater"), where all of the incidents alleged in his Complaint occurred. Plaintiff is currently housed at Fresno County Jail.

Plaintiff brings this action for violations of his rights under the First, Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments, as well as various federal statutes. He names the following individuals as Defendants: 1) Hector Alfonso Rios, Jr., Warden at USP Atwater, 2) John Bell, Associate Warden at USP Atwater, 3) Mr. Schwartz, Associate Warden of Food Service and Health Service at USP Atwater, 4) Jesus Estrada, Special

Investigation Agent at USP Atwater, 5) Mr. Keilman, Captain of Custody at Atwater, 6) John De Vere, Unit Manager at USP Atwater, 7) Kimberly Kodger, Chief Psychologist at USP Atwater, 8) Joel Zaragoza, Lieutenant of Special Investigation Services at USP Atwater, 9) Jesus Valcro, employee of Special Investigation Service, 10) Mr. Fisher, mail-room supervisor, 11) Robert C. Martinez, mail-room staff, 12) Mr. Luke, mail-room staff, 13) Mr. Caple, mail-room staff, 14) Mr. Bucio, mail-room staff, 15) Mr. V. Gonzales, lieutenant and alternative Disciplinary Hearing Officer, 16) Cassandra Harris, custody staff, 17) Stephew Putnam, lieutenant in the special housing unit and part of the Special Investigation Service, 18) Robert McFadden, Western Regional Director, 19) Robbie Johal, supervisor of the United States Post Office in Atwater, California, 20) Michael Peters, employee of the Federal Bureau of Investigation, and 21) Jesse Gonzalez, administrative remedy coordinator at USP Atwater.

Plaintiff asks for exemplary and punitive damages in various amounts, the removal of all information from all government files with his name, costs, and a jury trial.

The Complaint puts the Defendants into various groups based on their alleged wrongdoings. The Court will follow this approach. Plaintiff alleges as follows:

1. Defendants Rios, McFadden, Gonzalez, and Estrada stole Plaintiff's legal documents he was using to seek discharge of a debt. (Compl. at 5.) By doing so, these Defendants violated various federal statutes, subjected Plaintiff to "Domestic Genocide," "participated in the kidnaping of Plaintiff," and were part of a conspiracy. (Id.)

2. Defendants Estrada, Zaragoza, Valcro, Fisher, Martinez, Caple, Bucio, Rios, and Bell stole Plaintiff's certified mail which contained negotiable instruments worth over ten million dollars. (Compl. at 5.) These Defendants violated various federal statutes and intended to deprive Plaintiff of his property without due process. (Id.) These Defendants are part of an ongoing conspiracy to prevent Plaintiff from receiving any redress for his grievances.

3

(Id.)

3. Defendants Estrada, Zaragoza, Valcro, Fisher, Martinez, Luke, Caple, Bucio, Rios, and Bell stole Plaintiff's certified mail containing negotiable instruments worth over fifty thousand dollars. (Compl. at 6.) These defendants violated various federal statutes and are part of an ongoing conspiracy to prevent Plaintiff from receiving any redress for his grievances. (Id.)

4. Defendants Estrada, Zaragoza, Valcro, Fisher, Martinez, Luke, Caple, Buco, Rios, and Bell stole certified mail containing legal documents with the intent to deprive Plaintiff of his property without due process of law. (Compl. at 7.) These Defendants are part of an ongoing conspiracy to prevent Plaintiff from receiving any redress for his grievances. (Id.)

5. Defendants Estrada, Zaragoza, Valcro, Fisher, Martinez, Luke, Calpe, Bucio, Rios, and Bell stole Plaintiff's registered mail addressed to the Clerk of Court and held for ten days . (Compl. at 7.) They opened the mail and removed a criminal complaint. (Id.) They undertook these actions to deprive Plaintiff of his right to seek redress via grievances and to violate his right to due process and his right to be secure in his effects. (Id.) These Defendants are part of an ongoing conspiracy to prevent Plaintiff from receiving any redress for his grievances. (Id.)

6. Defendants Fisher, Martinez, Estrada, Zaragoza, Valcro, Rios, and Peters stole certified mail that belonged to Plaintiff and contained documents worth forty-five million dollars. (Compl. at 8.) By doing so, these Defendants violated various federal statutes, and they are part of an ongoing conspiracy to prevent Plaintiff from receiving any redress for his grievances. (Id.)

7. Defendants Wolff, Fisher, Bell, and Rios stole certified mail that belonged to Plaintiff. (Compl. at 8.) On October 6, 2010, Defendant Wolf had Plaintiff sign for his certified mail and then stole the documents. (Id. at 8-9.) By

4

|   |   |
|---|---|
| 1 | doing so, Defendant Wolf, in agreement with the other Defendants, violated Plaintiff's right to due process. (Id. at 9.) The documents were worth one hundred billion dollars. (Id.) These Defendants are part of an ongoing conspiracy to prevent Plaintiff from receiving any redress for his grievances. (Id.) Defendant Johal worked with other Defendants to steal, obstruct the passage of, and molest Plaintiff's mail. (Id.) These Defendants are part of an ongoing conspiracy to prevent Plaintiff from receiving any redress for his grievances. (Id.) |
| 8. | On September 20, 2010, Defendants Putnam and Estrada tried to convince Plaintiff to sign a document that declared he was part of the Black Gangsters Disciples and other gangs outlawed by Congress. (Compl. at 10.) By doing so, these Defendants violated various federal laws and they are part of an ongoing conspiracy to prevent Plaintiff from receiving any redress for his grievances. (Id.) |
| 9. | Defendants McFadden, Rios, Gonzalez, Bell, Schwartz, De Vere, Estrada, Keilman, and Kodger "abrogate Plaintiff right to effect an remedy pursuant to HJR-192" and subjecting him to "Domestic Genocide." (Compl. at 10.) These Defendants steal Plaintiff's mail from the courts and his family, creating conditions of slavery and domestic genocide. (Id.) Plaintiff has been declared a Prisoner of the Warden ("POW") and placed in special housing. (Id.) Plaintiff has been denied kosher meals required by his religion. (Id. at 11.) Plaintiff is housed in cells that have air conditioning even in the winter. (Id.) Plaintiff is subject to improper lighting conditions, and he has suffered from a spider bite he could not treat because of insufficient lighting. (Id.) Plaintiff has been denied process in connection with his living conditions. (Id. at 12.) These Defendants are in a conspiracy against Plaintiff. (Id.) |

5

## III. ANALYSIS

### A. Pleading Requirements

Under Fed. R. Civ. P. 8(a)(2) a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Plaintiff has not complied with this rule. Plaintiff's Complaint consists of a jumbled list of various federal statutes with a few mentions of the factual basis of his claims. Plaintiff throws in words like domestic genocide, slavery, and kidnaping. Plaintiff also mentions fantastical sums of money to which he was denied access. Plaintiff's few factual details are not clear and do not include fundamental information such as when the events occurred, who did what to cause the violation to occur, and what exactly happened during the incidents at issue. The Court cannot determine whether he states any cognizable claims. Plaintiff should review the standards set forth below and determine whether he believes he has cognizable claims, and should then set forth his claims in a clear and concise manner so that the Court may determine if he does indeed have any cognizable claims.

### B. Federal Rule of Civil Procedure 18(a)

Fed. R. Civ. P. 18(a) states that "[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

The fact that claims are premised on the same type of constitutional violation(s) (i.e. deliberate indifference) against multiple defendants does not make them factually related.

Claims are related where they are based on the same precipitating event, or a series of related events caused by the same precipitating event.

Plaintiff's Complaint clearly contains a number of unrelated claims in violation of rule 18. Plaintiff himself has identified nine distinct groupings of unrelated claims. It appears some of these claims should be broken down even further.

The Court finds based on the original pleading that the claims in paragraphs numbered 2, 3, 6, and 7 are fantastic and frivolous. The Court can envision no facts which would enable it to proceed on the basis of allegations that Plaintiff had mail containing documents worth billions of dollars. The Court will review and discuss Plaintiff's other non-frivolous claims and the law applicable to them so that Plaintiff might evaluate which, if any, he feels may be and should be pursued here and which, if any, may be and should be pursued in different actions.[1]

Plaintiff must file a separate complaint for each unrelated claim against different defendants at different facilities. If he does not, all unrelated claims will be subject to dismissal.

### B.  *Bivens* Linkage Requirement

When filing his amended complaint, Plaintiff should bear in mind that under <u>Bivens</u> a "compensable injury to a constitutionally protected interest [by federal officials alleged to have acted under color of federal law] could be vindicated by a suit for damages invoking the general federal question jurisdiction of the federal courts [pursuant to 28 U.S.C. § 1331]." <u>Butz v. Economou</u>, 438 U.S. 478, 486 (1978). As noted above, to state a claim, Plaintiff must demonstrate that each Defendant personally participated in the deprivation of his rights. <u>Iqbal</u>, 129 S.Ct. at 1949; <u>see</u> <u>Ewing v. City of Stockton</u>, 588 F.3d 1218, 1235 (9th Cir. 2009). A defendant cannot be held liable solely on the basis of supervisory responsibility or position. See <u>Terrell v. Brewer</u>, 935 F.2d 1015, 1018 (9th Cir.

---

[1] Plaintiff is reminded that filing an action based on claims that are not cognizable and/or frivolous may adversely affect his ability to file actions in forma pauperis in the future. 28 U.S.C. § 1915(g).

7

1990) (respondeat superior theory of liability inapplicable to Bivens actions).

### D. First Amendment Mail Claims

Plaintiff has alleged claims under the First Amendment resulting from interference with his mail.

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995), provided there must be a "delicate balance" between prisoners' First Amendment rights and the discretion given to prison administrators to govern the order and security of the prison. Thornburgh v. Abbott, 490 U.S. 401, 407-408 (1989). Prison officials have a responsibility to forward mail to inmates promptly. Bryan v. Werner, 516 F.2d 233, 238 (3d Cir. 1975). Allegations that mail delivery was delayed for an inordinate amount of time are sufficient to state a claim for violation of the First Amendment. Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir. 1996).

#### 1. Incoming Mail

Prisoners have a First Amendment right to receive mail. Prison Legal News v. Lehman, 397 F.3d 692, 699 (9th Cir. 2005) (citations omitted). The right is subject to substantial limitation, however, and the regulation or policy infringing on the right will be upheld if reasonably related to legitimate penological interests. Id. (citations omitted). Prison regulations relating to incoming mail are analyzed under the Turner reasonableness standard set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987). Thornburgh, 490 U.S. at 413-14 (1989). The regulation is valid if it is reasonably related to legitimate penological interests. Turner, 482 U.S. at 89. The Turner standard applies to regulations and practices concerning all correspondence between prisoners and to regulations concerning incoming mail received by prisoners from non-prisoners. Thornburgh, 490 U.S. at 413. In determining the reasonableness of the regulation, the court must consider the following factors: (1) whether there is a "valid, rational connection between the regulation and the legitimate government interest put forward to justify it," (2) "whether there are alternative means of exercising the right," (3) the impact that the "accommodation of the asserted

constitutional right will have on guards and other inmates," and (4) "the absence of ready alternatives." Turner, 482 U.S. at 89-90.

Plaintiff has alleged that on several unrelated occasions various Defendants seized his mail worth millions of dollars. The amount of claimed loss value strongly suggests the claims are frivolous. Regardless Plaintiff has failed to plead the essential elements of such a claim. He has not stated a claim. From the nature of what has ben pled, the Court concludes amendment would be futile. The Court will not give leave to amend such claims.

2. Outgoing Mail

Censorship of outgoing prisoner mail is justified if the following criteria are met: (1) the regulation furthers "an important or substantial government interest unrelated to the suppression of expression" and (2) "the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." Procunier v. Martinez, 416 U.S. 396, 413 (1974), overturned on other grounds by Thornburgh, 490 U.S. at 413-14.

Plaintiff has not provided sufficient information about these alleged seizures and how they violated his rights under the First Amendment to enable the Cofurt to find a cognizable claim therein. Plaintiff will be given leave to amend to include sufficient facts to address the requirements set forth above and to enable the Court to understand the incidents at issue and determine if a cognizable claim lies therein.

**E.     First Amendment Religion Claims**

Under the Constitution, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments." Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972). However, as with other First Amendment rights in the inmate context, prisoners' rights may be limited or retracted if required to "maintain [ ] institutional security and preserv[e] internal order and discipline." Bell v. Wolfish, 441 U.S. 520, 549 (1979). Restrictions on access to "religious opportunities"-whether group

9

services, chapel visits, or meetings with religious advisers-must be found reasonable in light of four factors: (1) whether there is a "valid, rational connection" between the regulation and a legitimate government interest put forward to justify it; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation). Turner v. Safley, 482 U.S. 78, 89-90 (1987); see also Beard v. Banks, 548 U.S. 521 (2006); Mauro v. Arpaio, 188 F.3d 1054, 1058-59 (9th Cir. 1999) (en banc).

Here Plaintiff has alleged that he was denied kosher meals necessary for his Hebrew religion. Plaintiff has not provided any information about how, when or why this happened or why the meals were necessary to his religion. Plaintiff should review the standards set forth above and set out sufficient facts in his amended complaint so that the Court may determine if he meets the factors needed for a cognizable First Amendment religion claim.

### F.     Fourth Amendment Claims

Under the Fourth Amendment, a seizure of property "occurs when there is some meaningful interference with an individual's possessory interest in that property." Jacobsen, 466 U.S. at 113. The United States Supreme Court has held that "the Fourth Amendment has no applicability to a prison cell." Hudson v. Palmer, 468 U.S. 517, 536 (1984). Further, the Court noted, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." Id. at 528 n.8.

Because there is no Fourth Amendment applicability to a prison cell, any claim raised by Plaintiff in this regard fails. Therefore, if Plaintiff chooses to file an amended complaint, he should omit any claim arising out of the seizure of materials from his cell.

### G.     Eighth Amendment Claim

Plaintiff alleges that he was subject to inhumane conditions at USP Atwater, including improper lighting and excessive air conditioning.

1    The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. Farmer v. Brennan, 511 U.S. 825, 832 (1994). The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishment," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive force against prisoners. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, i.e., the offending conduct was wanton, id. (citing Wilson, 501 U.S. at 297).

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. Farmer v. Brennan, 511 U.S. 825, 832 (1994). In some circumstances, a prison official may create a serious risk of irreparable harm, and thus violate the Eighth Amendment, by giving other inmates reason to believe that a particular inmate is a homosexual. Radillo v. Lunes, 2008 WL 4209824, *2 (E.D. Cal. Sept. 8, 2008); see also Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (deliberately spreading rumor that prisoner is snitch may state claim for violation of right to be protected from violence while in state custody). However, "speculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm." Williams v. Wood, 223 Fed.Appx. 670, 671, 2007 WL 654223, *1 (9th Cir. 2007).

Plaintiff does not point to any harm that has resulted from his living conditions. He has not specified when they occurred or who was responsible for them. Plaintiff will be given leave to amend this claim. However, amendment, if any, must allege particularized harm suffered by him, not a broad generalized fear that he might be exposed to such harm in the future, and that the detriment was objectively serious enough to casue harm and was motivated by a culpable state of mind.

**F.**     **Due Process Clause**

    1.     <u>Seizure of Mail</u>

Plaintiff fails to explain how Defendants' conduct violated the Fifth or Fourteenth Amendment.

Because Plaintiff is a federal prisoner, his claim for denial of his right to due process arises under the Fifth rather than the Fourteenth Amendment; however, the standard remains the same. <u>United States v. Nagel</u>, 559 F.3d 756, 759–60 (7th Cir. 2009). The guarantees of procedural due process under the Fifth and Fourteenth Amendments apply only when a constitutionally protected liberty or property interest is at stake. <u>See</u> <u>Ingraham v. Wright</u>, 430 U.S. 651, 672 (1977); <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 569 (1972); <u>Erickson v. United States</u>, 67 F.3d 858, 861 (9th Cir. 1995). The Constitution itself does not confer on a prisoner a liberty interest in avoiding "more adverse conditions of confinement." <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005); <u>see also</u> <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir. 1997) (finding no due process claim based on plaintiff's placement in Disciplinary Segregation Unit pending disciplinary hearing because plaintiff had no liberty interest in freedom from state action taken within sentence imposed, and finding that administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence); <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000) (finding no protected liberty interest in being free from confinement in the Segregated Housing Unit ("SHU") because placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life).

"[W]ithhold[ing] delivery of [inmate mail] must be accompanied by minimum procedural safeguards." <u>Procunier</u> 416 U.S. at 417-18. The "minimum procedural safeguards" are: (1) notifying the inmate that the mail was seized; (2) allowing the inmate a reasonable opportunity to protest the decision; and (3) referring any complaints to a prison official other than the one who seized the mail. <u>Procunier</u>, 416 U.S. at 418-19; <u>Krug v. Lutz</u>, 329 F.3d 692, 698 (9th Cir. 2003).

12

1    Although Plaintiff has made several allegations regarding the seizure of his mail, he
2 has not stated whether or not he was given any process to challenge or review the seizure
3 before or after it occurred.  Plaintiff has not explained how he was notified of the seizure or
4 whether he was able to complain to prison officials regarding the seizures.  Plaintiff should
5 review the standards set forth above before filing his amended complaint and set forth
6 sufficient facts in his amended complaint that would allow the Court to determine if he can
7 state a cognizable claim under the factors set forth above.

8              2.      Deprivation of Property

9    Plaintiff has not made any allegations regarding the return of his property.  However,
10 if here were to do so in his amended complaint, such a claim would be futile.

11    The Due Process Clause protects prisoners from being deprived of property without
12 due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and prisoners have a
13 protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir.
14 1974).  However, while an authorized, intentional deprivation of property is actionable under
15 the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n. 13 (1984) (citing
16 Logan v. Zimmerman Brush Co., 455 U.S. 422, 435–36 (1982)); Quick v. Jones, 754 F.2d
17 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of
18 property by a governmental employee "constitute a violation of the procedural requirements
19 of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation
20 remedy for the loss is available," Hudson, 468 U.S. at 533; see also Raditch v. United
21 States, 929 F.2d 478, 481 (9th Cir. 1991) ("Although Hudson involved § 1983 and the
22 Fourteenth Amendment, the same due process principles apply to the federal government
23 through the Fifth Amendment.").  The Federal Tort Claims Act provides a meaningful post-
24 deprivation remedy.  Thus, Plaintiff is unable to state a due process claim.

25       **G.    Equal Protection Claim**

26    The Equal Protection Clause of the Fourteenth Amendment requires that persons
27 who are similarly situated be treated alike.  City of Cleburne v. Cleburne Living Center, Inc.,

28                                           13

473 U.S. 432, 439 (1985). An equal protection claim may be established in two ways. The first method requires a plaintiff to show that the defendant has intentionally discriminated against the plaintiff on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001). Under this theory of equal protection, the plaintiff must show that the defendant's actions were a result of the plaintiff's membership in a suspect class, such as race, religion, or alienage. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

Plaintiff may wish to allege an equal protection as a result of his alleged denial of kosher meals, however his Complaint does not make any clear equal protection claim in connection with this sequence of events. If Plaintiff wishes to allege a claim under this first theory, he should clearly allege this in his amended complaint.

Under the second theory, Plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Village of Willowbrook, 528 U.S. at 564.

In his claim against Defendants, Plaintiff has alleged that his rights to equal protection were violated when various mailings were seized, when he was subjected to unspecified false statements, when he was subjected to an unspecified conspiracy, when he was deprived of unspecified rights, when he was unable to petition the government for redress, and when government documents were falsified to change Plaintiff's identity. None of these claims reflect a valid to equal protection violation in accordance with the legal requirements set out here.

14

**H.     Grievance Procedure**

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

In Mann v. Adams, 855 F.2d 639 (9th Cir. 1988), the Ninth Circuit held that a prisoner does not have a claim of entitlement to a grievance procedure. 855 F.2d at 640. This was reiterated in Ramirez v. Galarza, 334 F.3d 850 (9th Cir. 2003), when the Ninth Circuit observed that inmates do not have a separate constitutional entitlement to a grievance procedure. Thus, the case law is clear that Plaintiff is not entitled, as a matter of federal law, to a particular grievance procedure.

**IV.     CONCLUSION**

Plaintiff's Complaint fails to state a claim upon which relief may be granted under Bivens. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order, to the extent they are curable. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at

555 (citations omitted). Finally, an amended complaint supercedes the prior complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and it must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.  Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a Bivens complaint form;
2. Plaintiff's complaint, filed June 15, 2011, is dismissed for failure to state a claim upon which relief may be granted;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint; and
4. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:   May 24, 2012                        /s/ *Michael J. Seng*
                                              UNITED STATES MAGISTRATE JUDGE